Good morning, your honors. My name is Dale Atwell and I am representing the appellant in this case, Ann McHugh. May it please the court, I also am asking for five minutes for rebuttal. Enforcement of the waiver provision in McHugh's plea agreement presupposes that it was valid to begin with. The appellant argues that it's not valid to begin with because the analysis would require us to look to the plea itself. And this court in USA v. Mabry has told us that for a waiver of any provision to be valid, it must first be knowing and voluntary. Now, essentially that's the same analysis that's used to determine if a guilty plea itself is knowing and voluntary. There are two appeals here. Are you arguing the issue in 09-1381 right now? The second, yes. There was one. Yes, Judge, the second of the two. Thank you. And specifically right now I'm talking about the supplemental letter brief that the court asked that we write. You know, you better be careful what you ask for. You might get it. Suppose we say, yeah, the plea agreement was invalid. Okay. The charge is still there. Now they try her. She's done all the time. Now she gets convicted. Could happen. She gets convicted. Now she's going to get sentenced. I mean, I'm not sure she'll thank you, depending upon what the sentence is. I guess my response to that, Judge, is if the plea is invalid, the conviction, the resulting conviction itself has to be vacated. I understand that. And she has the right, despite, she has the right to go to trial if that's what she chooses to do. She has a criminal conviction now on her record that this person may not want. Does she really understand what she's doing? Because if we agree with you, it may be when the court hears all the testimony. Now, I know there's some cases about the whole subject of vindictive, you know, enhanced sentence. But it might not be a vindictive enhanced sentence at all, particularly since it was a plea agreement and it's being thrown out to just say, look, I've reviewed this thing, and I think that the sentence ought to be a custodial sentence for a substantial period. I mean, I can see where there's going to be, there could be a case following this case, if you get my point. I mean, I don't know. The sentence she actually received was time served plus a period of supervised release, which even when violated was not extended. Is that right? That's right. Quite frankly, Judge, Your Honors, as a practical matter, I have to agree with you. She got a very favorable disposition. However, in this instance, that's unique to Ms. McHugh herself. I guess we may be setting a dangerous precedent if we allow this to stand. She doesn't care about precedents. She should only care about herself, and I assume that's the way she views it. I just can't help but wonder if she understands the consequences of what's going on here. Now, it may be that the government will say, look, we're just going to drop this thing now. I think there's a good chance that could happen. But, you know, maybe not. But I just wanted to know in my own mind, does she understand the problem she's putting herself in? What I can tell you, Judge, quite frankly, is my communication with Ms. McHugh is constrained at best. She still suffers from some severe mental competency issues, and it's difficult to communicate with her. I've explained exactly what you're talking about. Be careful what you ask for. And she insists in her, I must say sometimes delusional state, that she does not want to be a perversant who's walking around with a criminal record. She still insists that she has this right to trial. She still insists that if she were to go to trial, she could win. It's not for us to say whether she's right or wrong or for us to say whether she's making the right decision, but she certainly has the right to do so. But if the waiver provision in McHugh's plea agreement is permitted to stand, it will create a miscarriage of justice under the two following scenarios. One is if McHugh is found incompetent and trial counsel not ineffective for failing to argue that issue, or if this court chooses not to address the mental competency issue in the context of a 2255. And either of those potential scenarios, if either are realized, then McHugh is left with no legal mechanism to challenge a conviction that may be constitutionally infirm due to her mental incompetence. There are two cases in this circuit that are on point, the Mabry case, as I mentioned, and also the Katak, if I'm pronouncing it right. And both of us tell us that there's a two-pronged analysis in determining whether a waiver is valid. And one, of course, is whether it's knowing involuntary. And if so, would it create enforcement? I'm sorry. 2255 says a prisoner in custody under a sentence and so forth. Is she in custody? No, Judge, but she still has the right, I believe, to argue that her counsel was ineffective in some trial strategy or in some representation of her in this proceeding. The specific claim that she's making is that she should not have been ‑‑ she should not have pled guilty because she was not competent to do so at the time. I understand it, but, you know, it says a prisoner, but if she's proceeding under 2255, it says a prisoner in custody under a sentence of a court claiming the right to be released. Now, custody is pretty broad, probation, parole, a lot of things. But I couldn't see where she was in any ‑‑ and then you can use all these substantive claims come in, and then you can ‑‑ that's the way you get to raise the substantive claims. But I can't see where she's ‑‑ where is she now? Is she ‑‑ She's in certain psychiatric facilities. Sometimes she's home. But the psychiatric facility is not pursuant to these proceedings. No, after ‑‑ at the time this initial claim was made, she was under supervised release from ‑‑ Oh, I see. She had violated ‑‑ and then she violated that because she was not taking her drugs. But at the time, I believe that she instituted this claim. She was still under supervised release. That may be all right then if she was in it when she brought it. I'm almost sure of that fact. Maybe the government will contradict me, but I think at the time she filed this appeal, that was the case. May I return to or turn to the appeal at 084754? Because even though you've not dealt with that at least up to this point, we have two separate appeals, two briefs out there, and that is the appeal of the district court order revoking supervised release. What is there that's appealable? She completed her 30‑day sentence of imprisonment, right? Judge, I'm going to rely on the brief as a supervised release issue. I do agree that the ultimate outcome of the supervised release situation was that the government conceded. The government and the judge and the district court allowed her, well, let's not have any more supervised release. Let's see if we can get this person some help. You have nothing to add? Nothing to add other than I think the district court did the right thing, and I think in any personal opinion, let's just get this person some help. She doesn't need supervised release anymore. But as to that appeal under our decision in U.S. v. Kissinger, it appears to me that that appeal is moot. The sentence has been served. There's no continuing injury. As to the parole supervision issue, yes, Judge, and I believe the government as well chose not to address that specifically and consolidate it. And her complaint, as I understand it, about being required to ingest antipsychotic or psychotropic medications, whatever they were, that's not an issue that would argue in any way against the mootness point of Judge Fisher. I'm going to have to agree with you, Judge. I think her complaint on the parole supervision replication was that she wanted a particular doctor who she liked, who was going to prescribe the particular drug that she liked. She was getting the different type of drugs, and she wasn't reacting the right way. She filed an appeal on that issue. And I will agree that there's no practical solution at this point because there is no parole. There is no supervised release. I'd argue that enforcement of the waiver would create a miscarriage of justice because McHugh has identified a non-frivolous issue, which is grounds for a viable direct appeal. And that issue is whether the plea and the resulting conviction are invalid due to mental incompetency. Denying that right requires this court and its sound discretion to refuse to honor the waiver. If there are any more questions, Judge, I will reserve my remaining time for rebuttal. We'll have you back for rebuttal. Thank you. Mr. Lappin. May it please the Court. My name is Louis Lappin, and I represent the government. I believe Judge Greenberg really hit on the issue as this argument started today, and that is that the defendant received a clearly favorable disposition in this case. And at this point, if your honors were to grant her any relief, which on this record I will argue absolutely you should not, she would end up in a far worse position than she was in before, which demonstrates not only that counsel, prior counsel, was not ineffective. In fact, he was extremely effective. He was an excellent advocate for her, and what he achieved for her was the best that she could have done. Because if we look at the point at which the competency issue presented itself first at the beginning of the case when the court determined that the defendant was not competent, that she needed to be sent to a facility where her competency could be restored, she was then incarcerated, she was in custody for a period of four to five months during the time that she was receiving treatment. At the end of that treatment period in March of 2007, the psychiatrists and the psychologists who were evaluating her determined that at that point she was competent, that she understood the nature of the charges against her, and that she had the ability to assist her attorney. I raised the question of being in custody. I looked at the briefs. It looks like she was in custody when she brought the 2255. I believe she was at that point on supervised release, which counts. I think. I forgot the rule, and it's funny, but we ought to know. If she's not in custody as the case proceeds, does the – if she's not in custody when the case proceeds, does the court lose jurisdiction? Well, serving a sentence of supervised release in this context, I believe, counts as custody. I understand that, but suppose it expires, and by the time the court gets around to hear it, she's not in custody. And if she's not in custody, she's not serving any sentence at that point, then I believe at that point there wouldn't be jurisdiction. And she's not, right? She's certainly not now. So you think that even though she was in custody and properly brought it, at some point, if she's no longer in custody, the case becomes moot? So I guess the theory is, well, what relief can you give her? Because the only relief is to discharge her from custody, and she's been discharged. Right. Well, she did at the time that she filed it. At the time she filed it, she was in custody, she was serving a sentence, and she does have a conviction. We are not arguing at this point that your honors do not have jurisdiction to hear. All right. She wants to have the chance to withdraw her guilty plea, which could lead to the scenario that Judge Greenberg initially created, where she could be worse off. But that's still what she's requesting. That is what she's requesting. And, in fact, it would even be worse than what Judge Greenberg is suggesting, because chances are, at this stage, she would have to go through the whole competency procedure again. She might very well, at this stage, if she's not taking her medication, she might be found incompetent, where, again, she would start over. She would go back to a facility to restore her competency. She could spend four or five more months in prison there. She could then get her, if her competency is restored, then she has a trial. And during a trial, humbly, I would argue that the government would succeed. It certainly would have a strong likelihood of succeeding, because the evidence against her is very strong. If she's then convicted, as Judge Greenberg pointed out, she could receive an additional sentence of imprisonment. And while she is ‑‑ I guess the point that this takes me to is even if we don't find mootness on 2255, it's very difficult under this factual set of circumstances to find any prejudice. Exactly. It's difficult to find prejudice, and it's difficult to find that counsel was ineffective, because this is exactly why counsel did what he did. It's difficult to find that counsel's conduct was deficient, which would be the first prong. But if you can't get the second prong of prejudice, which I can't see here under any scenario, you don't have the ability to have the writ granted under the claim of ineffective assistance of counsel. That's correct. She cannot show that she was prejudiced because, in fact, she received a time‑served sentence under the deal that counsel struck for her, which is exactly what he had anticipated. And she never served any additional time as she was sentenced. So counsel, again, in that regard, was effective. And the entire record, what it shows, if your honors look at the guilty plea proceeding, is that the defendant was, at that point in time, she demonstrated her competence as one can see from her engagement in the proceeding.  The plea for the appellant is only one question. And the contention is the issue, appellant was denied the effective assistance of counsel for failure to contest mental incompetency, which is not the same as saying that she was preceded when she was mentally incompetent. Because there's two elements. One, she was mentally incompetent. And two, he was ineffective. So what you're telling us is that if we just take the issue the way he states it, and he also has a summary of argument. Appellant contends her defense counsel was ineffective for failure to argue that she was incompetent to enter a guilty plea. What you're saying is, incompetent or not, he wasn't ineffective because he got a great result for her. He was not ineffective because he got a great result for her. That is correct. And because he had a reasonable basis not to challenge her competency. The report stated precisely, based on the observations and interviews, it is our professional opinion, Ms. McHugh has now recovered from the symptoms of mental disease to the extent that she's able to understand the nature and consequences of the proceedings against her and assist properly in her defense. This is the March 5, the second forensic report? Correct. March 5, 2001. Right. So counsel having received that report, if he really had no strong basis to challenge her competency, and if he had succeeded, let's not even look toward the future as far as we are now today looking for a reversal, right? If he had succeeded in that argument, she would have gone back into custody instead of being released from custody as she was under the terms of the plea agreement and the ultimate time served sentence. She would have just gone through the system again only to serve more time. So, of course, counsel here was, as I stated at the outset, this was not ineffective. He was extremely effective. And respectfully, this is not a close case in the government's view in any respect. Counsel was effective. There is no issue of a miscarriage of justice here. I'll address that briefly because we are not seeking to enforce the appellate waiver as to the issue that the defendant has raised. We're arguing that on the merits, and the merits here point only in one direction, and that is that counsel was effective, there was no prejudice, and the decision of the district court should be affirmed. Thank you very much, Mr. Lappin. Mr. Atwell, rebuttal. Thank you, Judge. Even if counsel is ineffective, even if you find that counsel is not ineffective, and even as a practical matter the results should stay the way it is, the dangerous possibility is that we might have a person who has been convicted of a crime on a guilty plea that's invalid because she was mentally incompetent to enter that guilty plea. But you only raised the issue, though, in terms of the competency of counsel. That's right, Judge, but I believe... It's not a pure argument that she was incompetent. There's two steps. I recognize that, Judge, and it's quite possible you can reach whatever decision we're going to reach today without ever touching the mental competency issue. But the problem is, one of the problems at least, is that she also, when she entered this guilty plea, she entered a plea agreement, and in the plea agreement were these waivers of the direct appeal, no waivers of any collateral appeals, and if she's not knowing, if she's not capable of entering a guilty plea, she was not capable of understanding that plea agreement or the waivers contained within it. If I'm following your argument, it is that the most important value here, from her perspective, may well be to be free of a felony record. As a practical matter, that's the only resolution that could be favorable. And indeed, one could say, looking at the procedural history of this case, that she evinced such an interest at the time of her guilty plea because she engaged in her own Q&A with Judge Brody, asking if the charge might indeed be reduced to a misdemeanor. You recall that in the colloquy, and of course she ran up against the obstacle that no, it couldn't. The problem with that, of course, is that important as that may have been to her or may yet be to her, it certainly also evinces a sufficient clarity of thought on her part at the time of the guilty plea colloquy to have known the difference, to have known the import of a felony conviction, and to have attempted, through questions of the judge, to have the charge reduced. It certainly suggests that she, for lack of a better term, had her wits about her at the time. A little difference to Your Honor's point, she had her wits about her if she was going to enter a plea. But we have a psychiatrist's report that says, if the case were to proceed to trial, McHugh would be unready for such demands at this point. But as long as she's going to take a plea, that's okay. And the Godinez case, the Supreme Court tells us in the Godinez case, is that the standard has to be the same. You can't be incompetent for trial, but competent to take a plea. But that's what happened here. But the bottom line was, the expert said she was competent. To take a plea. Competent. Well, no, we also said competent if the case were to proceed to trial. McHugh would be unready for such demand. But if she's going to take a plea, as this case resolved through a plea agreement, as is currently contemplated, McHugh is mentally competent to assist in her defense. That's what the professional had in front of him, and that was the analysis on competency that was made based on the facts that were known. That's right. And I guess my argument is that, well, maybe there's something wrong with a psychiatrist's report that tries to give us a competency exam depending upon what you choose to do. If she had changed her mind and gone to trial, well, then that would have been no good, according to this doctor. And that's the one that the court used. And additionally, there's another problem because she didn't take the plea right after she was released. She was cured in the psychiatric facility after six months of antipsychotic drugs. Then she was released because she was cured, but the plea didn't happen right away. The plea happened another month later. And during that month, she wasn't taking the drugs. So who knows what – we don't know what kind of condition she was in. The day she took that plea, she certainly wasn't in any condition to go to trial because we knew that even seven months ago, even with the drugs. What kind of condition was she in when she took the plea that day? And if that's the situation we have, we're left with, okay, a lawyer who's not ineffective for arguing this, but we have this plea out there that was taken and results in a criminal conviction of a person that may not have been capable of even understanding what was going on that day. Just for the sake of completeness, the March report that you referred to and seem to be suggesting has some inconsistency in it, at least with respect to competency to plead versus competency to stand trial, does have a final paragraph. The last section of the report, opinion on competency to stand trial, which states, based on observation and interviews, it is our professional opinion Ms. McHugh has now recovered from symptoms of a mental disease to the extent she is able to understand the nature and consequences of the proceedings against her and assist properly in her defense. I guess my response, Judge, would be to assist in what defense? Does she have the mental ability to assist a lawyer who's going to trial? No. Does she have the mental ability to assist a lawyer who's going to enter a plea? Well, that's okay. Is that a defense? Excuse me? Is a plea a defense? I'm sorry. Is a plea a defense? Of course not. No, but we're talking about... That's what the professionals clearly said she had the competency to assist in, her defense. That doesn't suggest a plea to me. It suggests a trial, and given the fact that the paragraph appears, designated competency to stand trial would seem to be their ultimate opinion. Well, additionally, we can't get away from the fact that they also tried to condition the mental competency evaluation with this plea-trial dichotomy, and it's not a frivolous issue. The Supreme Court in Godinus tells it that you have to be equally capable of doing both, whether you plea or you go to trial, and it's not a frivolous issue, and it's one that deserves a appellate review. Failure to enforce that waiver would create a miscarriage of justice. Thank you very much. Thank you. Thank you. Thank you, Your Honor. Both of you. Thank you to both of counsel. We'll take the case under advisement, and I would declare a plea.